KAREN P. HEWITT
United States Attorney
EUGENE S. LITVINOFF
Assistant U.S. Attorney
California State Bar No. 214318
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone No.: (619) 557-5790
E-Mail: Eugene.Litvinoff2@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARLOS DAVID QUINONEZ, SR.,<br><br>Defendant. | ) Criminal Case No. 08CR0301-W<br>)<br>) Date:        April 9, 2008<br>) Time:        9:00 a.m.<br>)<br>) GOVERNMENT'S RESPONSE AND<br>) OPPOSITION TO DEFENDANT'S<br>) MOTIONS TO:<br>)<br>) (1)  COMPEL DISCOVERY;<br>) (2)  PRESERVE EVIDENCE;<br>) (3)  SUPPRESS STATEMENTS;<br>) (4)  HOLD VOLUNTARINESS HEARING;<br>) (5)  PRECLUDE AIDING AND ABETTING<br>)        THEORY;<br>) (6)  GRANT LEAVE TO FILE FURTHER<br>)        MOTIONS; AND<br>) (7)  DISMISS INDICTMENT<br>)<br>) TOGETHER WITH STATEMENT OF FACTS<br>) AND MEMORANDUM OF POINTS AND<br>) AUTHORITIES, AND GOVERNMENT'S<br>) MOTION FOR<br>)<br>) (1)  RECIPROCAL DISCOVERY<br>)<br>) |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel

Karen P. Hewitt, United States Attorney, and Eugene S. Litvinoff, Assistant U.S. Attorney, and

hereby files its response and opposition to the motions filed on behalf of Defendant Carlos David

Quinonez, Sr. ("Defendant") and hereby files its motion for reciprocal discovery.  This response

and opposition and motion for reciprocal discovery is based upon the files and records of this case.

# I

## INTRODUCTION

Defendant stands charged with two counts of  three counts of transportation of illegal aliens, in violation of 8 U.S.C. § 1324.

# II

## STATEMENT OF FACTS

**A.     Primary Inspection**

On January 28, 2008, at approximately 12:47 a.m., Defendant entered the San Ysidro, California Port of Entry as the driver, registered owner, and sole visible occupant of a 2000 Toyota Avalon, bearing California license plate number 5VRW176.  Defendant presented his California driver's license to Officer Duran in primary inspection.  During the course of the inspection, Officer Duran asked Defendant a number of questions.  In response, Defendant stated that he is a United States citizen, that he was not bringing anything into the United States, and that he worked for the County of Orange.  Defendant then showed Officer Duran his work identification.

Officer Duran conducted an inspection of the vehicle and discovered a person concealed in the trunk.  Officer Duran handcuffed Defendant and escorted him to the security office.  Another officer then drove the vehicle to secondary for further inspection.

**B.     Secondary Inspection**

At secondary inspection, a lone male individual, later identified as Raul Esquivel-Olvera, was removed from the trunk.  The material witness was determined to be a citizen of Mexico with no entitlements to enter the United States.

**C.     Defendant's Statement**

At approximately 6:47 a.m., Defendant was advised of his Miranda rights in the English language.  Defendant agreed to answer questions without an attorney present.  Defendant stated that he drove from Orange County, California to Tijuana, Mexico at approximately 11:30 p.m. the night before.  He stated that as soon as it started raining in Orange County, he headed to Tijuana to cover parts of the roof on his grandparents' unoccupied home.  He was there for 30 - 40 minutes attending to the house before he headed back to the United States.

1   According to Defendant, he stopped at an intersection near the border in Tijuana when the
2   material witness approached his vehicle and asked for help.  Defendant stated that the material
3   witness told him about his family hardship and asked Defendant for a ride into the United States.
4   Defendant also stated that he knew the material witness wanted to be smuggled into the United
5   States.  Defendant stated that he felt sorry for the material witness and decided to help by
6   smuggling him into the U.S.  Defendant stated that he opened the trunk of the vehicle and that the
7   material witness climbed in.

8   Defendant admitted that he had the Registered Process Server identification card in its
9   leather holder around his neck when he entered the San Ysidro Port of Entry.  He also stated that
10   the material witness was inside the trunk for approximately 5 minutes.

11   Defendant stated that he intended on taking the material witness to Orange County, but that
12   he was not going to receive any compensation.

13   **D.    Material Witness's Statement**

14   The material witness, Raul Esquivel-Olvera, stated that he is a Mexican citizen by birth and
15   that he does not possess any documents that would permit his legal entry into the United States.
16   He stated that he wanted to go to Anaheim, California to seek employment.

17   Esquivel described how he and his wife made smuggling arrangements directly with
18   Defendant.  Although he was not sure of the exact amount, he stated that he was going to pay
19   Defendant between $2,800 and $3,000 upon his arrival in Anaheim.  Esquivel stated that his wife
20   currently resides in Anaheim, and that she was going to pay Defendant upon arrival.

21   Esquivel stated that Defendant picked him up at the Hotel Buenavista in Tijuana.  He
22   waited outside for Defendant after his wife told him that Defendant was on his way to pick him up.
23   He state that he waited approximately 2 ½ hours outside the hotel.  Additionally, he stated that
24   Defendant opened the trunk and told Esquivel that if they got caught, to say that he just asked
25   Defendant for a ride.  Esquivel stated that he was in the trunk for about 20 minutes before being
26   apprehended at the border.

27

28

**III**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### UNITED STATES' MEMORANDUM OF POINTS AND AUTHORITIES

**A.    THE GOVERNMENT WILL CONTINUE TO COMPLY WITH ALL ITS DISCOVERY OBLIGATIONS**

The Government intends to fully comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. § 3500), and Rule 16 of the Federal Rules of Criminal Procedure. The Government has already made 114 pages of discovery and a DVD recording available to the defense. The Government anticipates that most discovery issues can be resolved amicably and informally, and has addressed Defendant's specific requests below.

**(1)    The Defendant's Statements**

The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant the substance of Defendant's oral statements and Defendant's written statements. The Government has produced all of Defendant's written and videotaped statements that are known to the undersigned Assistant U.S. Attorney at this date. If the Government discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided to Defendant.

The Government has no objection to the preservation of the handwritten notes taken by any of the Government's agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the Government objects to providing Defendant with a copy of any rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The Government is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case do not

1    constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d

2    1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes

3    were scattered and all the information contained in the notes was available in other forms). The

4    notes are not Brady material because the notes do not present any material exculpatory

5    information, or any evidence favorable to Defendant that is material to guilt or punishment.

6    Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither

7    favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos,

8    27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence

9    was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable

10    under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendant.

11    **(2)    Arrest Reports, Notes, Dispatch Tapes, and TECS**

12    The United States has provided the Defendant with arrest reports. As noted previously,

13    agent rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16

14    discovery. The United States is unaware of any dispatch tapes regarding Defendant's

15    apprehension.

16    The United States opposes Defendant's request for TECS border crossing reports. While

17    disclosure would be required if the Government intended to use TECS information as Rule 404(b)

18    evidence, see United States v. Vega, 188 F.3d 1150 (9th Cir. 1999), there is no valid basis for

19    requiring disclosure where the information will not be used as Rule 404(b) evidence. As stated

20    above, the United States will comply with its Rule 404(b) notice and disclosure obligations.

21    **(3)    Brady Material**

22    Again, the United States is well aware of and will continue to perform its duty under Brady

23    v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose

24    exculpatory evidence within its possession that is material to the issue of guilt or punishment.

25    Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be,

26    favorable to the accused, or which pertains to the credibility of the United States' case. As stated

27    in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution

28    does not have a constitutional duty to disclose every bit of information that might affect the jury's

1    decision; it need only disclose information favorable to the defense that meets the appropriate

2    standard of materiality." Id. at 774-775 (citation omitted).

3        The United States will turn over evidence within its possession which could be used to

4    properly impeach a witness who has been called to testify.

5        Although the United States will provide conviction records, if any, which could be used

6    to impeach a witness, the United States is under no obligation to turn over the criminal records of

7    all witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such

8    information, disclosure need only extend to witnesses the United States intends to call in its case-

9    in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini,

10   607 F.2d 1305, 1309 (9th Cir. 1979).

11       Finally, the United States will continue to comply with its obligations pursuant to

12   United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

13       **(4)    Defendant's Prior Record**

14       The United States has already provided Defendant with a copy of his known criminal

15   record in accordance with Federal Rule of Criminal Procedure 16(a)(1)(B).

16       **(5)    Proposed 404(b) and 609**

17       Should the United States seek to introduce any similar act evidence pursuant to Federal

18   Rule of Evidence 404(b), the United States will provide Defendant with notice of its proposed use

19   of such evidence and information about such bad act at the time the United States' trial

20   memorandum is filed.

21       Defendant has a lengthy and distinguished criminal history (approximately 22 felony and

22   misdemeanor convictions dating back to 1980), all of which have been disclosed to Defendant in

23   discovery.  In an abundance of caution, the United States notices Defendant with its intent to

24   impeach his testimony with any of these convictions.  However, two misdemeanor convictions, in

25   particular, stand out – (1) a 1984 misdemeanor conviction for forgery; and (2) a 1996 misdemeanor

26   conviction for hit and run: property damage.  Both of these convictions go directly to the heart of

27   Defendant's veracity.

28   //

1

**(6)**    **Evidence Seized**

2    The United States has complied and will continue to comply with Rule 16(a)(1)(C) in

3 allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical

4 evidence which is within the possession, custody or control of the United States, and which is

5 material to the preparation of Defendant's defense or are intended for use by the United States as

6 evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

7 The United States, however, need not produce rebuttal evidence in advance of trial.  United States

8 v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

9    **(7)**    **Preservation of Evidence**

10    The United States will preserve all evidence to which Defendant is entitled pursuant to the

11 relevant discovery rules.  However, the United States objects to Defendant's blanket request to

12 preserve all physical evidence.

13    The United States has complied and will continue to comply with Rule 16(a)(1)(C) in

14 allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical

15 evidence which is within his possession, custody or control of the United States, and which is

16 material to the preparation of Defendant's defense or are intended for use by the United States as

17 evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

18 The United States has made the evidence available to Defendant and Defendant's investigators and

19 will comply with any request for inspection.

20    Again, the United States will continue to comply with its obligations pursuant to

21 United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

22    **(8)**    **Tangible Objects**

23    The Government has complied and will continue to comply with Rule 16(a)(1)(E) in

24 allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all

25 tangible objects seized that is within its possession, custody, or control, and that is either material

26 to the preparation of Defendant's defense, or is intended for use by the Government as evidence

27 during its case-in-chief at trial, or was obtained from or belongs to Defendant.   The Government

28

1    need not, however, produce rebuttal evidence in advance of trial. <u>United States v. Givens</u>, 767

2    F.2d 574, 584 (9th Cir. 1984).

3    **(9)    <u>Expert Witnesses</u>**

4    The Government will comply with Rule 16(a)(1)(G) and provide Defendant with a written

5    summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705

6    of the Federal Rules of Evidence during its case-in-chief at trial. This summary shall include the

7    expert witnesses' qualifications, the expert witnesses opinions, the bases, and reasons for those

8    opinions.

9    **(10)    <u>Reports of Scientific Tests or Examinations</u>**

10    Defendant requests written reports of tests pursuant to Federal Rules of Criminal Procedure

11    16(f). The United States will disclose to Defendant the name, qualifications, and a written

12    summary of testimony of any expert the United States intends to use during its case-in-chief at trial

13    pursuant to Fed. R. Evid. 702, 703, or 705.

14    **(11)    <u>*Henthorn* Material</u>**

15    The United States will continue to comply with its obligations pursuant to <u>United States</u>

16    <u>v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991).

17    **(12)    <u>Evidence of Bias or Motive to Lie</u>**

18    The United States is unaware of any evidence indicating that a prospective witness is biased

19    or prejudiced against Defendant. The United States is also unaware of any evidence that

20    prospective witnesses have a motive to falsify or distort testimony.

21    **(13)    <u>Impeachment Evidence</u>**

22    The United States will turn over evidence within its possession which could be used to

23    properly impeach a witness who has been called to testify.

24    **(14)    <u>Criminal Investigation of Government Witness</u>**

25    Defendants are not entitled to any evidence that a prospective witness is under criminal

26    investigation by federal, state, or local authorities. "[T]he criminal records of such [Government]

27    witnesses are not discoverable." <u>United States v. Taylor</u>, 542 F.2d 1023, 1026 (8th Cir. 1976);

28    <u>United States v. Riley</u>, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records

1    of prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United

2    States v. Rinn, 586 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that

3    the Government has no discovery obligation under Fed. R. Crim. P. 16(a)(1)(C) to supply a

4    defendant with the criminal records of the Government's intended witnesses.") (citing Taylor, 542

5    F.2d at 1026).

6         The Government will, however, provide the conviction record, if any, which could be used

7    to impeach witnesses the Government intends to call in its case-in-chief.  When disclosing such

8    information, disclosure need only extend to witnesses the United States intends to call in its case-

9    in-chief.  United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini,

10   607 F.2d 1305, 1309 (9th Cir. 1979).

11        **(15)    Evidence Affecting Perception, Recollection, Communication or Veracity**

12        The United States is unaware of any evidence indicating that a prospective witness has a

13   problem with perception, recollection, communication, or truth-telling.

14        **(16)    Witness Addresses**

15        The Government has already provided Defendant with the reports containing the names of

16   the agents involved in the apprehension and interviews of Defendant.  A defendant in a non-capital

17   case, however, has no right to discover the identity of prospective Government witnesses prior to

18   trial.  See Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Dishner, 974 F.2d

19   1502, 1522 (9th Cir 1992) (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)); United

20   States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996).   Nevertheless, in its trial memorandum, the

21   Government will provide Defendant with a list of all witnesses whom it intends to call in its case-

22   in-chief, although delivery of such a witness list is not required.  See United States v. Discher, 960

23   F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).   The

24   Government is not aware of any "tips" provided by anonymous or identified persons that resulted

25   in Defendant's arrest.

26        The Government objects to any request that the Government provide a list of every witness

27   to the crimes charged who will not be called as a Government witness.  "There is no statutory basis

28   for granting such broad requests," and a request for the names and addresses of witnesses who will

1   not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)(C)." <u>United States v. Hsin-</u>

2   <u>Yung</u>, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting <u>United States v. Boffa</u>, 513 F. Supp. 444, 502

3   (D. Del. 1980)).  The Government is not required to produce all possible information and evidence

4   regarding any speculative defense claimed by Defendant.  <u>Wood v. Bartholomew</u>, 516 U.S. 1, 6-8

5   (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery

6   of admissible exculpatory evidence are not subject to disclosure under <u>Brady</u>).

7       **(17)    Witnesses Favorable to the Defendant**

8       As stated earlier, the Government will continue to comply with its obligations under <u>Brady</u>

9   and its progeny.  At the present time, the Government is not aware of any witnesses who have

10  made an arguably favorable statements concerning Defendant or who could not identify him or

11  who were unsure of his identity or participation in the crime charged.

12      **(18)    Statements Relevant to the Defense**

13      To reiterate, the United States will comply with all of its discovery obligations.  However,

14  "the prosecution does not have a constitutional duty to disclose every bit of information that might

15  affect the jury's decision; it need only disclose information favorable to the defense that meets the

16  appropriate standard of materiality."  <u>Gardner</u>, 611 F.2d at 774-775 (citation omitted).

17      **(19)    Giglio Information**

18      As stated previously, the United States will comply with its obligations pursuant to <u>Brady</u>

19  <u>v. Maryland</u>, 373 U.S.  83 (1963), the Jencks Act, <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir.

20  1991), and <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

21      **(20)    Informants and Cooperating Witnesses**

22      At this time, the Government is not aware of any confidential informants or cooperating

23  witnesses involved in this case.  The Government must generally disclose the identity of

24  informants where (1) the informant is a material witness, or (2) the informant's testimony is crucial

25  to the defense. <u>Roviaro v. United States</u>, 353 U.S. 53, 59 (1957).  If there is a confidential

26  informant involved in this case, the Court may, in some circumstances, be required to conduct an

27  in-chambers inspection to determine whether disclosure of the informant's identity is required

28  under <u>Roviaro</u>.  <u>See</u> <u>United States v. Ramirez-Rangel</u>, 103 F.3d 1501, 1508 (9th Cir. 1997).  If the

1   Government determines that there is a confidential informant somehow involved in this case, the

2   Government will either disclose the identity of the informant or submit the informant's identity to

3   the Court for an in-chambers inspection.

4       **(21)**   **Bias by Informants or Cooperating Witnesses**

5       As stated previously, the United States will comply with its obligations pursuant to <u>Brady</u>

6   <u>v. Maryland</u>, 373 U.S. 83 (1963), the Jencks Act, <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir.

7   1991), and <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

8       **(22)**   **Jencks Act Material**

9       The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified

10   on direct examination, the Government must give the Defendant any "statement" (as defined by

11   the Jencks Act) in the Government's possession that was made by the witness relating to the

12   subject matter to which the witness testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks

13   Act is (1) a written statement made by the witness and signed or otherwise adopted or approved

14   by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's

15   oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). If notes

16   are read back to a witness to see whether or not the government agent correctly understood what

17   the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks

18   Act. <u>United States v. Boshell</u>, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing <u>Goldberg v. United</u>

19   <u>States</u>, 425 U.S. 94, 98 (1976)). While the Government is only required to produce all Jencks Act

20   material <u>after</u> the witness testifies, the Government plans to provide most (if not all) Jencks Act

21   material well in advance of trial to avoid any needless delays.

22   **B.**    **DEFENDANT'S MIRANDA WAIVER WAS KNOWING AND VOLUNTARY AND NOT A VIOLATION OF HIS FIFTH AMENDMENT RIGHTS**

23

24       Defendant moves to suppress statements and requests that the Government prove that all

25   statements were voluntarily made, and made after a knowing and intelligent <u>Miranda</u> waiver.

26   Defendant contends that 18 U.S.C. § 3501 mandates an evidentiary hearing be held to determine

27   whether Defendant's statements were voluntary.

//

28

1

**1.    Knowing, Intelligent, and Voluntary Miranda Waiver**

2      A statement made in response to custodial interrogation is admissible under Miranda v.

3   Arizona, 384 U.S. 437 (1966), and 18 U.S.C. § 3501 if a preponderance of the evidence indicates

4   that the statement was made after an advisement of Miranda rights, and was not elicited by

5   improper coercion.  See Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of

6   evidence standard governs voluntariness and Miranda determinations; valid waiver of Miranda

7   rights should not be found in the "absence of police overreaching").

8      A valid Miranda waiver depends on the totality of the circumstances, including  the

9   background, experience, and conduct of the defendant. North Carolina v. Butler, 441 U.S. 369,

10   374-75 (1979).   To be knowing and intelligent, "the waiver must have been made with a full

11   awareness of both the nature of the right being abandoned and the consequences of the decision

12   to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). The Government bears the burden

13   of establishing the existence of  a valid Miranda waiver. North Carolina v. Butler, 441 U.S. at 373.

14   In assessing the validity of a defendant's Miranda waiver, this Courts should analyze the totality

15   of the circumstances surrounding the interrogations.  See Moran v. Burbine, 475 U.S. at 421.

16   Factors commonly considered include: (1) the defendant's age (see United States v. Doe, 155 F.3d

17   1070, 1074-75 (9th Cir. 1998) (en banc) (valid waiver because the 17 year old defendant did not

18   have trouble understanding questions, gave coherent answers, and did not ask officers to notify

19   parents), (2) the defendant's familiarity with the criminal justice system (see United States v.

20   Williams, 291 F.3d 1180, 1190 (9th Cir. 2002) (waiver valid in part because defendant was

21   familiar with the criminal justice system from past encounters), (3) the explicitness of the Miranda

22   waiver (see United States v. Bernard S., 795 F.2d 749, 753 n.4 (9th Cir. 1986) (a written Miranda

23   waiver is "strong evidence that the waiver is valid"); United States v. Amano, 229 F.3d 801, 805

24   (9th Cir. 2000) (waiver valid where Miranda rights were read to defendant twice and defendant

25   signed a written waiver), and (4) the time lapse between the reading of the Miranda warnings and

26   the interrogation or confession.  See Guam v. Dela Pena, 72 F.3d 767, 769-70 (9th Cir. 1995)

27   (valid waiver despite 15-hour delay between Miranda warnings and interview).

28

1    Here, the CBP Officers scrupulously honored the letter and spirit of <u>Miranda</u> in carefully

2    advising Defendant of his <u>Miranda</u> rights prior to any post-arrest custodial interrogation.  As

3    evidenced by the video recording, Defendant was advised of his <u>Miranda</u> rights, both orally and

4    in writing, before the interrogation.  When Defendant asked if the interview would be prolonged

5    if he got a lawyer, the interviewing agent stated that he (the agent) was not here to make deals or

6    promises, but was there only to investigate the matter.  In what appears to be a somewhat mumbled

7    statement, Defendant did say that he would not waive his rights and would like a public defender.

8    In a yes/no question asked solely to clarify, the interviewing agent asked "so you don't want to

9    answer our questions until you get a lawyer?"  Rather than affirming his previous statement,

10   Defendant asked the agent if he needed a lawyer.  The agent explained that he cannot advise

11   Defendant, and then told Defendant that he had two options: (1) either talk to the agents right now

12   without a lawyer, or (2) wait to get a lawyer.  The agent then truthfully told Defendant that he

13   would not be given a lawyer "on the spot."  At this point, Defendant told the interviewing agent

14   that he wished to proceed with the interview without a lawyer.  Contrary to Defendant's

15   characterization, he did not unequivocally invoke his Fifth Amendment right.

16   Additionally, Defendant is by no means a stranger to the American criminal justice system.

17   Undoubtedly, on his road to collecting 7 felony and 15 misdemeanor convictions over the past 28

18   years, he also received a commensurate number of <u>Miranda</u> warnings.  To characterize Defendant

19   as finally "relent[ing]" is pure fiction.  [Def. Mot. 2:23.]

20        **2.    <u>Defendant's Statements Were Voluntary</u>**

21   The inquiry into the voluntariness of statements is the same as the inquiry into the

22   voluntariness of a waiver of <u>Miranda</u> rights.  <u>See</u> <u>Derrick v. Peterson</u>, 924 F.2d 813, 820 (9th

23   Cir.1990).   Courts look to the totality of the circumstances to determine whether the statements

24   were "the product of free and deliberate choice rather than coercion or improper inducement."

25   <u>United States v. Doe</u>, 155 F.3d 1070, 1074(9th Cir. 1998)(<u>en</u> <u>banc</u>).

26   A confession is involuntary if "coerced either by physical intimidation or psychological

27   pressure."  <u>United States v. Crawford</u>, 372 F.3d 1048, 1060 (9th Cir. 2004) (quoting <u>United States</u>

28

1    v. Haswood, 350 F.3d 1024, 1027 (9th Cir. 2003)).    In determining whether a defendant's

2    confession was voluntary, "the question is 'whether the defendant's will was overborne at the time

3    he confessed.'" Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir.), cert. denied, _ U.S. _, 124 S.

4    Ct. 446 (2003) (quoting Haynes v. Washington, 373 U.S. 503, 513 (1963)).    Psychological

5    coercion invokes no per se rule. United States v. Miller, 984 F.2d 1028, 1030 (9th Cir. 1993).

6    Therefore, the Court must "consider the totality of the circumstances involved and their effect upon

7    the will of the defendant." Id. at 1031 (citing Schneckloth v. Bustamonte, 412 U.S. 218, 226-27

8    (1973)).

9         In determining the issue of voluntariness, this Court should consider the five factors under

10    18 U.S.C. § 3501(b).  United States v. Andaverde, 64 F.3d 1305, 1311 (9th Cir. 1995).  These five

11    factors include: (1) the time elapsing between arrest and arraignment of the defendant making the

12    confession, if it was made after arrest and before arraignment, (2) whether such defendant knew

13    the nature of the offense with which he or she was charged or of which he was suspected at the

14    time of making the confession, (3) whether or not such defendant was advised or knew that he or

15    she was not required to make any statement and that any such statement could be used against him,

16    (4) whether or not such defendant had been advised prior to questioning of his or her right to the

17    assistance of counsel; and (5)  whether or not such defendant was without the assistance of counsel

18    when questioned and when giving such confession. 18 U.S.C. § 3501(b).  All five statutory factors

19    under 18 U.S.C. § 3501(b) need not be met to find the statements were voluntarily made.  See

20    Andaverde, 64 F.3d at 1313.

21         As discussed above, Defendant was read his Miranda rights and was provided with a

22    written advice of rights and Miranda waiver form prior to his post-arrest interview.  Defendant has

23    failed to articulate how a person who has sustained 7 felony convictions and 15 misdemeanor

24    convictions could not understand rights that were admittedly acknowledged by Defendant.

25    Ultimately, Defendant explicitly stated that he understood his Miranda rights and agreed to waive

26    those rights.  See United States v. Gamez, 301 F.3d 1138, 1144 (9th Cir. 2002).  Defendant's

27    statements were not the product of physical intimidation or psychological pressure of any kind by

28

1    any Government agent.  There is no evidence that Defendant's will was overborne at the time of

2    his statements.  Consequently, Defendant's motion to suppress his statements as involuntarily

3    given should be denied.

**D.    DEFENDANT'S MOTION TO PRECLUDE AN AIDING AND ABETTING
       THEORY HAS BEEN FORECLOSED BY THE NINTH CIRCUIT**

Defendant argues that the Government should be precluded from proceeding under an

aiding and abetting theory, because it was not alleged in the indictment.  However, the Ninth

Circuit has held time and again that "[a]iding and abetting may be implied in every substantive

federal offense."  United States v. Vaandering, 50 F.3d 696, 702 (9th Cir. 1995); United States v.

Armstrong, 909 F.2d 1238, 1241 (9th Cir. 1990); United States v. Gaskins, 849 F.2d 454, 459 (9th

Cir. 1988); United States v. Michaels, 796 F.2d 1112, 1117-18 (9th Cir. 1986); see also United

States v. Cannon, 993 F.2d 1439, 1442 (9th Cir. 1993) (holding that "[e]very indictment for a

federal offense charges the defendant as a principal and as an aider and abettor; thus a count for

aiding and abetting is unnecessary").  In Armstrong, the court held that 18 U.S.C. § 2 does not

define a substantive offense and does not even need to be alleged in an indictment.  Even if the

aiding and abetting statute had not been included in the indictment (and the statute reference is in

fact included in the indictment), the United States would be free to argue an aiding and abetting

theory to the jury, regardless of the substantive charges.  See Michaels, 796 F.2d at 1118.  Once

the indictment is returned, Armstrong, Gaskins, and Michaels mandate that aiding and abetting is

embodied in full for all the charges contained therein.

The Ninth Circuit recently restated these principles in United States v. Garcia, 400 F.3d 816

(9th Cir. 2005).  There, the court denied a claim that an indictment was duplicitous because it

stated both substantive alien smuggling offenses (under 8 U.S.C. § 1324), as well as the general

aiding and abetting statute (18 U.S.C. § 2).  See Garcia, 400 F.3d at 817.  "Simply put, Garcia's

position is that the elements of aiding and abetting are different from the elements of smuggling

or transporting an alien because the latter is a general intent crime while the former requires

specific intent."  Id. at 818.  The court rejected that claim, noting that aiding and abetting was

implied in every federal indictment, and was "simply one means of committing a single crime."

1    <u>Id.</u> at 819-20.  As one theory of liability, it is not a separate offense requiring the pleading of

2    elements to a grand jury.  The Indictment was not defective.

3          The Government also notes that Defendant is wrong when Defendant contends that all of

4    the Ninth Circuit cases holding that aiding and abetting is implied in every indictment involved

5    challenges to jury instructions, as opposed to challenges to indictments.  <u>Garcia</u> itself involved a

6    challenge to the indictment.

7          Thus, because aiding and abetting is a theory of liability, rather than a substantive offense,

8    no elements of that theory of liability – including the specific intent element – need be included

9    in an indictment.

10
11   **F.    THE GOVERNMENT DOES NOT OPPOSE LEAVE TO FILE FURTHER
       MOTIONS, SO LONG AS THEY ARE BASED ON NEW EVIDENCE**

12         The Government does not object to the granting of leave to file further motions as long as

13   the order applies equally to both parties and any additional defense motions are based on newly

14   discovered evidence or discovery provided by the Government subsequent to the instant motion.

15   **G.    DEFENDANT'S MOTION TO DISMISS THE INDICTMENT DUE TO
       MISINSTRUCTION TO THE GRAND JURY SHOULD BE DENIED**

16
17         Defendant has filed a lengthy attack upon Judge Larry A. Burns' instructions to the Grand

18   Jury that was empaneled on January 11, 2008.  Every district judge to consider this motion has

19   rejected it as baseless.  Government counsel is aware of three written orders issued denying this

20   motion. [<u>See</u> Judge John A. Houston Orders, Attachments A and B; <u>see also</u> Judge Barry T.

21   Moskowitz Order, Attachment C.]  For the reasons stated in this Court's prior orders, this Court

22   should also deny Defendant's motion.

23                                        **IV**

24              **GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY**

25   **A.    ALL EVIDENCE FOR DEFENDANT'S CASE-IN-CHIEF**

26         Since the Government will honor Defendant's request for disclosure under Rule

27   16(a)(1)(E), the Government is entitled to reciprocal discovery under Rule 16(b)(1).  Pursuant to

28

1  Rule 16(b)(1), the United States requests that Defendant permit the Government to inspect, copy

2  and photograph any and all books, papers, documents, photographs, tangible objects, or make

3  copies or portions thereof, which are within the possession, custody, or control of Defendant and

4  which Defendant intends to introduce as evidence in his case-in-chief at trial.

5          The Government further requests that it be permitted to inspect and copy or photograph any

6  results or reports of physical or mental examinations and of scientific tests or experiments made

7  in connection with this case, which are in the possession and control of Defendant, which he

8  intends to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom

9  Defendant intends to call as a witness.  The Government also requests that the Court make such

10  order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the Government receives

11  the reciprocal discovery to which it is entitled.

12          **B.      RECIPROCAL JENCKS – STATEMENTS BY DEFENSE WITNESSES**

13          Rule 26.2 provides for the reciprocal production of Jencks material. Rule 26.2 requires

14  production of the prior statements of all witnesses, except a statement made by Defendant.  The

15  time frame established by Rule 26.2 requires the statements to be provided to the Government after

16  the witness has testified.  However, to expedite trial proceedings, the Government hereby requests

17  that Defendant be ordered to provide all prior statements of defense witnesses by a reasonable date

18  before trial to be set by the Court.  Such an order should include any form in which these

19  statements are memorialized, including but not limited to, tape recordings, handwritten or typed

20  notes and reports.

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

1

V

2

**CONCLUSION**

3

For the foregoing reasons, the United States requests that the Court deny Defendant's

4

motions, except where unopposed, and grant the Government's motion for reciprocal discovery.

5

DATED: April 2, 2008

6

7

Respectfully submitted,

8

KAREN P. HEWITT
United States Attorney

9

10

/s/ *Eugene S. Litvinoff*
EUGENE S. LITVINOFF
Assistant U.S. Attorney

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

3

UNITED STATES OF AMERICA,           )           Case No. 08CR0301-W
                                     )
4              Plaintiff,            )
                                     )
5                                    )
      v.                             )
6                                    )           CERTIFICATE OF SERVICE
   CARLOS DAVID QUINONEZ, SR.,       )
7                                    )
               Defendant.            )
8  _____)

9      IT IS HEREBY CERTIFIED THAT:

10          I, EUGENE S. LITVINOFF, am a citizen of the United States and am at least eighteen

11     years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-

12     8893.

13          I am not a party to the above-entitled action.  I have caused service of **GOVERNMENT'S**

14     **RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS AND GOVERNMENT'S**

15     **MOTION FOR RECIPROCAL DISCOVERY** on the following parties by electronically filing

16     the foregoing with the Clerk of the District Court using its ECF System, which electronically

17     notifies them.

18          **1.      Hanni M. Fakhoury**

19          I hereby certify that I have caused to be mailed the foregoing, by the United States Postal

20     Service, to the following non-ECF participants on this case:

21          N/A

22     the last known address, at which place there is delivery service of mail from the United States

23     Postal Service.

24          I declare under penalty of perjury that the foregoing is true and correct.

25          Executed on April 2, 2008

26
                              /s/ *Eugene S. Litvinoff*
27                            EUGENE S. LITVINOFF
                              Assistant U.S. Attorney
28