**HANNI M. FAKHOURY**
California Bar No. 252629
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
Hanni_Fakhoury@fd.org

Attorneys for Mr. Quinonez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE THOMAS J. WHELAN)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 08CR0301-W |
| Plaintiff, | ) ) | DATE: June 17, 2008 |
| v. | ) ) | TIME: 9:00 a.m. |
| **CARLOS DAVID QUINONEZ, SR.**, | ) ) | STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND |
| Defendant. | ) ) | AUTHORITIES IN SUPPORT OF MOTIONS |

**I.**

**STATEMENT OF FACTS**

Mr. Quinonez hereby incorporates by reference the statement of facts set forth in previous motions filed in this case.

**II.**

**THIS COURT SHOULD PRECLUDE DETAILS OF THE
COMPARTMENT CONTAINING THE MATERIAL WITNESS**

Under Federal Rules of Evidence 401, 402, and 403, Mr. Quinonez moves to exclude any details about the compartment in which the material witness was hidden. Mr. Quinonez also moves to exclude any testimony regarding the temperature in the compartment, as this information is unverifiable and irrelevant. The size, nature and temperature of this compartment might be an appropriate sentencing issue in some cases. In no way, however, does the size, nature, and temperature of the compartment address an element

1  of the crime; nor does it rebut any possible defense at trial. It is utterly irrelevant to any disputed issue in
2  this case.

3  In contrast, this information is incredibly prejudicial. Details of this compartment serve only to
4  inflame and prejudice the jury, and could lead a jury to seek to punish Mr. Quinonez regardless of fault.
5  Under Rules 401, 402, and 403, this evidence should be excluded at trial. Moreover, exclusion of this
6  evidence will further secure Mr. Quinonez's Fifth and Sixth Amendment rights to a reliable jury verdict, and
7  will eliminate the risks of conviction based upon consideration of arbitrary and irrelevant evidence in
8  violation of the Fifth Amendment.

9  The evidence on this point should be limited to testimony that the material witness was discovered
10 in the trunk of the vehicle. Any other evidence regarding the conditions inside the compartment should be
11 excluded. See Fed. R. Evid. 401; 402; 403. See also United States v. Unruh, 855 F.2d 1363, 1377 (9th Cir.
12 1987) (admission of evidence with minimal probative value which could cause jurors to decide case on
13 legally irrelevant grounds could be abuse of discretion); United States v. Mehrmanesh, 689 F.2d 822, 830
14 (9th Cir. 1992) (government must articulate basis for admissibility).

**III.**

**THIS COURT SHOULD PRECLUDE THE GOVERNMENT FROM PRESENTING HEARSAY STATEMENTS ABOUT SMUGGLING ARRANGEMENTS UNDER CRAWFORD**

18 The Confrontation Clause forbids the use of hearsay against a criminal defendant at trial, if the
19 defendant is not afforded the right to confrontation. See Crawford v. Washington, 541 U.S. 36 (2004).
20 Under Federal Rule of Evidence 802, hearsay statements are inadmissible unless one or more hearsay
21 exceptions apply. When a statement involves multiple levels of hearsay, each level must be independently
22 admissible for the statement to come into evidence. Fed. R. Evid. 805.

23 Here, the material witness told agents that his wife made all of the arrangements for him to be
24 smuggled into the United States. The material witness did not personally make any arrangements, and he
25 told agents that he did not make any payments before leaving Mexico. Thus, anything that the material
26 witness may know about financial arrangements comes, not from his own knowledge, but from hearsay:
27 what his wife said to him. The material witness' wife, who apparently made all of the arrangements, is not
28 expected to testify at trial. Thus, Mr. Quinonez will be deprived of his opportunity to confront this person

about the alleged financial arrangements. Accordingly, admission of statements through the material witness will violate Mr. Quinonez's Sixth Amendment confrontation rights, and the admission of these statements would further violate the hearsay rules. This Court should exclude these statements at trial.

**IV.**

**THIS COURT SHOULD PRECLUDE ANY EVIDENCE
UNDER FEDERAL RULES OF EVIDENCE 404(B) AND 609**

**A.    Exclusion of Other Acts Evidence Under Rules 404(b) and 403.**

Federal Rule of Evidence 404(b) strictly forbids the use of evidence of prior crimes or bad acts merely to prove bad character. United States v. Garcia-Orozco, 997 F.2d 1302, 1303-04 (9th Cir. 1993). The use of evidence pursuant to this rule "must be narrowly circumscribed and limited" and "may not be introduced unless the government establishes its relevance to an actual issue in the case." Id. at 1304 (citing United States v. Hodges, 770 F.2d 1475, 1479 (9th Cir. 1985)). The purpose of Rule 404(b) is to "avoid a danger that the jury will punish the defendant for offenses other than those charged, or at least that it will convict when unsure of guilt, because it is convinced that the defendant is a bad man deserving of punishment." United States v. Hill, 953 F.2d 452, 457 (9th Cir. 1991). The government carries the burden of showing how any other acts evidence is relevant to one or more issues in the case. It "must articulate precisely *the evidential hypothesis* by which a fact of consequence may be inferred from the other acts evidence." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982) (citing United States v. Hernandez-Miranda, 601 F.2d 1104, 1108 (9th Cir. 1979)) (emphasis added); accord United States v. Brooke, 4 F.3d 1480, 1483 (9th Cir. 1993).

Because of the probative value of this evidence is typically outweighed by the danger of unfair prejudice, Fed. R. Evid. 403, the government is required to provide "reasonable notice in advance of trial" of any evidence of "other crimes, wrongs, or acts" it plans to introduce. Fed. Evid. 404(b). Timely notice of such evidence is not only a condition precedent to the admission of such evidence, but also critical so that Mr. Quinonez may adequately prepare his defense. The notice requirement is triggered when timely requested by the defendant. United States v. Vega, 188 F.3d 1150, 1154 (9th Cir. 1999). Here, Mr. Quinonez timely requested notice of proposed Rule 404(b) evidence in his motion to compel discovery, dated March 10, 2008. See Docket #14 at 4, paragraph 5. To date, the Government has not provided any

notice of its intent to use any of Mr. Quinonez's prior convictions as proposed Rule 404(b) evidence at trial. Because the government has failed to provide adequate notice of other crimes, wrongs, or acts allegedly committed by Mr. Quinonez, let alone articulate the precise evidential hypothesis by which this evidence will be admitted, this Court should exclude any evidence the government seeks to introduce under Rule 404(b).

**B.     Exclusion of Prior Convictions to Impeach Witness Under Rule 609.**

In its Response and Opposition to Mr. Quinonez's March 10, 2008 motions, the government gave notice that it intended to use two of Mr. Quinonez's convictions for impeachment purposes under Federal Rule of Evidence 609: a 1984 misdemeanor conviction for forgery (California Penal Code § 470) and a 1996 conviction for hit and run with property damage (California Penal Code § 20002(a)). On May 29, 2008 the government gave notice that it intends to also impeach Mr. Quinonez with three additional convictions: a 1988 misdemeanor conviction for false identification to a peace officer (California Penal Code § 148.9); a 1997 conviction for possession of a controlled substance (California Health and Safety Code § 11350(a)); and a 2000 conviction for felon in possession of a firearm, carrying a concealed weapon in a vehicle with a prior felony conviction and taking a vehicle without consent (California Penal Code §§ 12021(a)(1), 12025(a)(1), California Vehicle Code § 10851(a)). The government should be precluded from using any of these convictions to impeach Mr. Quinonez should he decide to testify.

Federal Rule of Evidence 609(a)(1) restricts impeachment of the accused by evidence of a prior conviction to those offenses for which the court determines that the probative value outweighs its prejudicial effect to the accused. Rule 609 contains other important limitations on the use of prior convictions to impeach the accused at trial. Rule 609(a)(1) requires that only felony convictions - those punishable by "imprisonment in excess of one year under the law under which the witness was convicted" - can be admitted to impeach. Additionally, Federal Rule of Evidence 609(b) provides a ten year time limit for the use of prior convictions to impeach a witness. Specifically, Rule 609(b) states convictions over ten years old should be inadmissible "unless the court determines, in the interests of justice, that the probative value of the conviction supported by *specific facts and circumstances substantially outweighs* its prejudicial effect." Fed. R. Evid. 609(b) (emphasis added). The Advisory Committee Notes to Federal Rule of Evidence 609(b) explain that "convictions over ten years old generally do not have much probative value" and "that

convictions over 10 years old will be admitted very rarely and only in exceptional circumstances."

The Ninth Circuit has outlined five factors that should guide the district court's decision whether to admit evidence under Rule 609(a)(1): (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness' subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. United States v. Jimenez, 214 F.3d 1095, 1098 (9th Cir. 2000) (listing five "Cook" factors from United States v. Cook, 608 F.2d 1175, 1185 n.8 (9th Cir. 1979) (en banc)); see also United States v. Wallace, 848 F.2d 1464, 1473 n.12 (9th Cir. 1988); United States v. Givens, 767 F.2d 574, 579-80 (9th Cir. 1985). "Although the trial judge is not required to state his or her analysis of each of the five factors with special precision, the record should reveal, at a minimum, that the trial judge was aware of the requirements of Rule 609(a)(1)." Jimenez, 214 F.3d at 1098 (citations and internal quotation marks omitted).

The correct procedure is for a district judge to ensure that the record reflects a consideration of the five Cook factors, as well as a weighing of the probative value of the conviction being offered against its prejudicial effect. Likewise, as proponents of the impeachment evidence, prosecutors should be vigilant about seeing to it that the record supports the judge's ruling. Turning to each of the specific convictions referenced by the government, none of them should be admissible to impeach Mr. Quinonez.

**1.     1984 Forgery Conviction - California Penal Code § 470**

This conviction is inadmissible because it is a misdemeanor. Forgery can be punished as a misdemeanor or felony. California Penal Code § 473. California Penal Code § 17(b) explains that when a crime is punishable as either a felony or a misdemeanor, it becomes a misdemeanor if the judgment imposed is not imprisonment in the state prison. Here, Mr. Quinonez was sentenced to 36 months of probation and 5 days of jail. Since Mr. Quinonez received a sentence of less than one year, his conviction is a misdemeanor. Since it is a misdemeanor, it is inadmissible under Rule 609(a)(a). Additionally, the conviction is more than ten years old - in fact almost twenty five years old - and thus inadmissible under Rule 609(b).

Although Rule 609(a)(2) allows for the admission of any conviction for which it can "readily be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness," this conviction should nevertheless be excluded. As noted in the Advisory

Committee Notes to Rule 609(b), convictions "convictions over ten years old generally do not have much probative value" and "convictions over 10 years old will be admitted very rarely and only in exceptional circumstances." This misdemeanor conviction is almost twenty five years old. To raise it now to question Mr. Quinonez's character for truthfulness should he decide to testify takes the jury away from deciding the case based on the facts presented at trial as opposed to Mr. Quinonez's past criminal conduct.

**2.     1988 False Identification to a Peace Officer Conviction - California Penal Code § 148.9**

For the same reasons outlined above with respect to the 1984 forgery conviction, the 1988 conviction should be inadmissible. California Penal Code § 148.9 is a misdemeanor by statute. Furthermore, Mr. Quinonez received a sentence of three days in jail with no probation. Notwithstanding Rule 609(b), this conviction is twenty years old and thus "do[es] not have much probative value." Advisory Committee Notes to Rule 609(b).

**3.     1996 Hit and Run Conviction - California Vehicle Code § 20002(a)**

The 1996 conviction is inadmissible because it is a misdemeanor, punishable by a maximum of six months in jail. California Vehicle Code § 20002(c). Furthermore, it is inadmissible because it is over ten years old and the government has not shown that "the probative value of the conviction supported by *specific facts and circumstances substantially outweighs* its prejudicial effect." Fed. R. Evid. 609(b) (emphasis added). Finally, it does nothing to shed light on Mr. Quinonez's character for truthfulness because that statute does not involve the use of a false statement or any misleading information.

**4.     1997 Possession of A Controlled Substance Conviction - California Health & Safety Code 11350(a)**

This conviction is inadmissible because it is also beyond the ten year time limit specified in Rule 609(b) and its probative value for character for truthfulness is not "substantially outweighed" by its prejudicial effect. Nothing about this conviction sheds light on Mr. Quinonez's character for truthfulness. If anything, this conviction will do nothing more than turn the jury against Mr. Quinonez, believing him to be a drug addict for activity than happened almost eleven years ago. The danger of unfair prejudice substantially outweighs the trivial probative value of this conviction and thus should be excluded. Fed. R. Evid. 403.

//

5.  **2000 Conviction for Felon in Possession of a Firearm, Carrying A Concealed Firearm in a Vehicle, Taking Vehicle Without Consent - California Penal Code §§ 12021(a)(1), 12025(a)(1); California Vehicle Code § 10851(a)**

The probative value of these convictions is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. Again, nothing about this conviction sheds light on Mr. Quinonez's character for truthfulness. Additionally, nothing in the facts of this case demonstrate that Mr. Quinonez was carrying a firearm when he was arrested or posed a danger to any of the officers at the port of entry. This conviction will do nothing more than paint a picture of Mr. Quinonez as a dangerous man in the jury's mind, distracting them from the only issue in this case: whether Mr. Quinonez is guilty of the crimes he is charged with.

To the extent that this Court rules that any of Mr. Quinonez's prior convictions are admissible under Rule 609, this Court should redact any documents referencing, and preclude the prosecutor from referring to, the offense and specific facts of any crime for which Mr. Quinonez was convicted. Such information would be more prejudicial than probative of Mr. Quinonez's guilt of the charged offense. See Fed. R. Evid. 401, 403, 609.

Additionally, the government should not be permitted to impeach Mr. Quinonez with all five of these convictions, as repeatedly referring Mr. Quinonez's criminal history distracts the jury from its sole purpose in this case: determining whether Mr. Quinonez is guilty of the crimes for which he is charged. Furthermore, referencing all five of these convictions would be unnecessarily cumulative and prejudicial. Fed. R. Evid. 403.

### V.

### THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM INTRODUCING MR. QUINONEZ'S POST-ARREST STATEMENTS PURSUANT TO ITS ORDER SUPPRESSING MR. QUINONEZ'S STATEMENTS.

At the motion hearing and trial setting status conference on April 9, 2008, this Court granted Mr. Quinonez's motion to suppress his post-arrest statements because the officers violated Mr. Quinonez's Miranda rights. Therefore these statements are inadmissible.

### VI.

### THIS COURT SHOULD EXCLUDE POVERTY EVIDENCE

It is impermissible for the prosecution to elicit testimony or to comment in any fashion upon the difficult financial circumstances of the defendant. Such comments upon poverty are forbidden. United

States v. Romero-Avila, 210 F.3d 1017, 1022 n.2 (9th Cir. 2000).

Even before the Romero-Avila case, this Circuit had so concluded. In United States v. Mitchell, 172 F.3d 1104 (9th Cir.1999), the defendant was convicted of bank robbery, and at trial, the prosecution offered evidence that the defendant was poor to prove the defendant's motive to commit the bank robbery. In reversing the conviction, the court stated that:

> Poverty as proof of motive has in many cases little tendency to make theft more probable. Lack of money gives a person an interest in having more. But so does desire for money, without poverty. A rich man's greed is as much a motive to steal as a poor man's poverty. Proof of either, without more, is likely to amount to a great deal of unfair prejudice with little probative value.

Id. at 1108-09. To be admissible, the court stated that the poverty evidence must be accompanied by something more, such as an "unexplained, abrupt change in circumstances." Id. at 1108-09. Ninth Circuit precedent suggests that poverty evidence is only admissible if accompanied by evidence of a specific and immediate financial need. See United States v. Jackson, 882 F.2d 1444, 1453 (9th Cir.1989) (Reinhardt, J., dissenting); see also id. at 1450 (majority opinion) (noting that "poverty alone does not indicate a motive to commit, or the commission of, a crime"); see also United States v. Bensimon, 172 F.3d 1121, 1129 (9th Cir. 1999) (fact that defendant in bankruptcy at time crime committed does not demonstrate particular need for money); Mitchell, 172 F.3d 1104, 1108-09 (9th Cir.1999) (evidence of poverty, absent "an unexplained abrupt change of circumstances," is inadmissible to prove motive); United States v. Grissom, 645 F.2d 461, 469 n.11 (5th Cir.1981) ("[I]t is almost always grossly improper for any lawyer representing the United States government to comment on the indigency of a defendant.").

"Poverty comments" may not be made even when the evidence commented upon is admitted by the defense. Romero-Avila, 210 F.3d 1017, 1022 and n.2 (9th Cir. 2000). Romero-Avila specifically rejected the very argument that the defendant is barred from challenging comments upon improper poverty testimony because he elicited it during cross-examination, and held that the government's comments were plain error. As such, regardless of any evidence proffered by the defendant as to his financial circumstances, any reference to the defendant's financial situation must be excluded.

//

//

**VII.**

**THIS COURT SHOULD EXCLUDE ANY EXPERT
WITNESSES OFFERED BY THE GOVERNMENT**

Federal Rule of Criminal Procedure 16(a)(1)(E) mandates that "[a]t the defendant's request, the government shall disclose to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case in chief at trial . . .. The summary provided under this subdivision shall describe the witnesses' opinions, the bases and the reasons for those opinions, and the witnesses' qualifications." The obligation to provide this material is ongoing, continuing prior to and during trial. Fed. R. Crim. P. 16(c). When a party fails to comply with the discovery rules set forth in Rule 16, exclusion is a proper remedy. Fed. R. Crim. P. 16(d)(2). See also Advisory Committee Notes to 1997 Amendment (asserting that "[u]nder rule 16(a)(1)(E), as amended in 1993, the defense is <u>entitled</u> to disclosure of certain information about expert witnesses which the government intends to call during the trial" (emphasis provided.).

On March 10, 2008, Mr. Quinonez filed a motion to compel discovery requesting the government disclose the "the name, qualifications, and a written summary of the testimony of any person that the Government intends to call as an expert witness during its case in chief" pursuant to Fed. R. Crim. P. 16(a)(1)(E). See Docket #14 at 5, paragraph 9. Thus far, the government has given no notice of any expert witness testimony. If the government seeks to offer expert testimony without (1) timely notifying the defense of the expert and his or her qualifications; (2) providing a summary of the expected testimony; and (3) providing a summary of the bases of the expert's opinion, this Court should exclude such witnesses from testifying at trial. If the government has not given expert notice by the motions in limine hearing date, Mr. Quinonez respectfully requests that this Court grant a motion in limine to give effect to the discovery requirements of Rule 16, and to afford the accused the opportunity to prepare her defense in this case.

Mr. Quinonez specifically asks that this Court preclude any government witness from testifying regarding the temperature or conditions inside of the compartment. Such testimony, which would amount to an expert opinion, should be precluded unless the government complies with its expert disclosure requirements under Rule 16 and Mr. Quinonez has the opportunity to voir dire the proffered expert on the issue.

## VIII.

## THIS COURT SHOULD PRECLUDE THE GOVERNMENT FROM INTRODUCING TECS HISTORY

In order to admit TECS evidence, the government must lay a proper foundation under Federal Rule of Criminal Procedure Rule 16, Rules 404(b) and 702, the hearsay rules and the Confrontation Clause of the Sixth Amendment. Mr. Quinonez's position is that, in either the government's case-in-chief or in rebuttal, TECS evidence is inadmissible because: 1) it is undisclosed Rule 404(b) evidence; 2) it is undisclosed expert testimony; 3) there is no hearsay exception on which the government can rely; and 4) the government cannot demonstrate the reliability of the TECS system. See United States v. Orozco, 590 F.2d 789, 792-93 (9th Cir. 1979) (to admit TECS documents under Rule 803(8), the TECS system's reliability must be demonstrated).[1]

**A.    TECS Testimony Is Undisclosed Rule 404(b) Evidence.**

The Ninth Circuit recognizes that prior border crossings are considered prior act evidence and are, thus, subject to Rule 404(b) analysis. United States v. Vega, 188 F.3d 1150, 1153 (9th Cir. 1999) ("evidence of Vega's prior border crossings and bank deposits is "other acts" evidence subject to the provisions of Rule 404(b)"). In Vega, the Court noted that "[a]s an initial matter, we note that this rule applies to all 'other acts,' not just bad acts. Thus, despite the fact that there is nothing intrinsically improper about Vega's prior

---

[1.] The defense contends that Orozco is wrong, and this Court should not follow it. Even the panel decision recognizes that it conflicts with the plain language of Rule 803(6), see id. 590 F.2d at 792 ("noting that Rule 803(8) provides that its scope "exclud[es], however in criminal cases matters observed by police officers and other law enforcement personnel . . ." and noting that "the customs inspector is one of the 'law enforcement personnel' included in rule 803(8)"). Government reports, which these are, are inadmissible under the public records exception. Fed. R. Evid. 803(8)(c), Advisory Comm. Note ("they are admissible only in civil cases and against the government in criminal cases in view of the almost certain collision with confrontation rights which would result from their use against the accused in a criminal case"); see also United States v. Oates, 560 F.2d 45 (2d Cir. 1977) (cited in the Fed. R. Evid. commentary expressly discusses the Rules 803(6) and 803(8) interplay and finds government reports inadmissible under both).

In addition, the inadmissibility of these documents under Rule 803(8)(c) cannot be cured by offering them pursuant to Rule 803(6). Rule 803(6) does not, by its terms, "apply to [investigations made pursuant to authority granted by law and the] findings of agencies and offices of the executive branch," United States v. Jones, 29 F.3d 1549 (11th Cir. 1994); as does Rule 803(8)(c). It is "inappropriate" to rely upon the business records exception when the language of Rule 803(8)(c) is clearly applicable. United States v. Sims, 617 F.2d 1371, 1377 (9th Cir. 1980); Alexander, The Hearsay Exception for Public Records in Federal Criminal Trials, 47 Alb. L. Rev. 699, 716-17 (1983).

border crossings . . . they are nonetheless subject to 404(b)." Id.

The prosecutor here gave notice on May 29, 2008 of his intent to introduce TECS evidence under both Federal Rule of Criminal Procedure 16(a)(1)(G) and Rule 404(b) of the Federal Rules of Evidence. Although Mr. Quinonez requested the government disclose all TECS reports and any other 404(b) evidence in his March 10, 2008 motions, see Docket #14 at 3, paragraph 2, thus far Mr. Quinonez has not received any TECS data. If the government now wishes to introduce this as some sort of Rule 404(b) evidence in his case, he must disclose the data to Mr. Quinonez to review prior to trial, establish the link to Mr. Quinonez and the relevance to his theory of prosecution, as well as satisfy the strictures of Rule 404(b).

**B.    TECS Testimony is Undisclosed Expert Testimony.**

In this case, any TECS evidence would also constitute undisclosed expert testimony. Even though the government witness through which the government would seek to admit TECS evidence would not be rendering an "opinion," this does not remove this testimony from the realm of "expert testimony." The law provides to the contrary. According to Rule 702, the assumption that "experts testify only in the form of opinions . . . is logically unfounded." See Fed. R. Crim. P. 702 Advisory Committee's Note. Rule 702 similarly provides that expert testimony can be based on "specialized knowledge," and cases indicate that the amendments to Rules 701 and 702 were made so as to prevent litigants from avoiding the expert witness disclosure requirements by labeling individuals as fact or laywitnesses and not soliciting "opinion" testimony. See In re Matter of the Complaint Illusions Holdings, Inc., 189 F.R.D. 316 (S.D.N.Y. 1999). The Complaint Illusions case involved a negligence claim surrounding a scuba diving accident. Defendants listed two witnesses who knew nothing about the facts and circumstances of the case, but purported to know much about scuba diving. Plaintiff argued that their testimony was expert testimony and sought to exclude it. Even though the testimony was factually based and the witnesses would merely describe things related to scuba diving, the court held that it was expert testimony because it was based upon the specialized knowledge related to scuba diving, testified to by individuals who otherwise had no connection to the case. Id.

Similarly, any testimony by a Customs Officer that his or her training equipped him or her to render an opinion on what the TECS information signified would constitute undisclosed expert testimony, the reliability of which has never been litigated, under Federal Rule of Criminal Procedure 16 and Kumho Tire

Co. v. Carmichael, 526 U.S. 137 (1999).

## IX.

### THE COURT SHOULD EXCLUDE THE GOVERNMENT'S CASE AGENT

The Court may not exclude "a person whose presence is shown by a party to be essential to the presentation of the party's case" during a trial. Fed. R. Evid. 615(3). The government has made no showing that its case agent is such a person.

## X.

### THE COURT SHOULD NOT SEND THE INDICTMENT INTO THE JURY ROOM DURING DELIBERATIONS

In the commentary to Model Instruction 3.2.1, "Charge Against Defendant Not Evidence," the Committee on Model Jury Instructions, in the Ninth Circuit Manual of Model Jury Instructions, strongly recommends that the indictment not be sent into the jury room during deliberations. The commentary observed that neither the Federal Rules of Criminal Procedure, nor case law, require sending a copy of the indictment to the jury room because the indictment is not evidence.

Mr. Quinonez urges this Court to follow the Committee's guidance. The language in the instant indictment "tracks" the language of the charged statutes. Accordingly, it is probable that jurors will be persuaded by the similarities alleged in the indictment returned by the grand jury and the elements which must be proven in the charged statutes. Furthermore, the indictment recites that "the grand jury charges," and this could persuade those jurors without experience with the grand jury system that another jury had already found Mr. Quinonez guilty. Mr. Quinonez also requests that this Court caution the jury that the indictment is not evidence. See United States v. Utz, 886 F.2d 1148, 1151-1152 (9th Cir. 1989).

## XI.

### THIS COURT SHOULD ALLOW ATTORNEY-CONDUCTED VOIR-DIRE

Pursuant to Rule 24(a), Federal Rules of Criminal Procedure, to provide effective assistance of counsel and to exercise Mr. Quinonez's right to trial by an impartial jury, defense counsel requests the opportunity to personally voir dire the prospective members of the jury.

//

//

## XII.

## THIS COURT SHOULD ORDER PRODUCTION OF GRAND JURY TRANSCRIPTS

The Court should order production of grand jury transcripts when the defense can show a particularized need. The particularized need present in this case is that a witness may have testified before the grand jury, who will likely testify at Mr. Quinonez's trial. The government must produce a transcript of a witness' testimony before the grand jury following the direct examination of a witness at trial. 18 U.S.C. § 3500; Dennis v. United States, 384 U.S. 855 (1966); Fed. R. Crim. 26.2(f)(3). The defense requests that the government make such transcripts available in advance of trial to facilitate the orderly presentation of evidence and to remove any need for recess in the proceedings for defense counsel to examine the statements pursuant to Fed. R. Crim. P. 26.2(d).

Additionally, Mr. Quinonez moves for the production of grand jury transcripts, even if the grand jury witness *does not* testify at trial. If the government's grand jury witness was not the case agent in this case, that witness likely testified based upon information provided by other agents. The government has, thus, adopted the witness' grand jury testimony by "manifest[ing] an adoption or belief in its truth." See Fed. R. Evid. 801(d)(2)(B). The grand jury testimony also constitutes an admission "by a person authorized by the party to make a statement concerning the subject matter," see Fed. R. Evid. 801(d)(2)(C), and constitutes "statement[s] by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," see Fed. R. Evid. 801(d)(2)(D).

Furthermore, to the extent that any of the grand jury testimony in this case is in any way inconsistent with the testimony adduced at trial, the grand jury testimony constitutes exculpatory impeachment evidence. See Giglio v. United States, 405 U.S. 150 (1972). As discussed above, such evidence would be admissible as an adoptive admission pursuant to Rule 801(d)(2). At a minimum, this Court should conduct an *in camera* review of the grand jury testimony and order the transcript produced if it contains any testimony that might be Brady material, or otherwise subject to production, as explained above.

//
//
//
//

## XIII.

## CONCLUSION

For the foregoing reasons, Mr. Quinonez respectfully requests that the Court grant the above motions in limine.

Respectfully submitted,

Dated: June 5, 2008

*s/ Hanni M. Fakhoury*
**HANNI M. FAKHOURY**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Quinonez
Hanni_Fakhoury@fd.org