KAREN P. HEWITT
United States Attorney
PETER J. MAZZA
Assistant U.S. Attorney
California State Bar 239918
United States Attorney's Office
880 Front Street #6293
San Diego, CA  92101-8893
Telephone:  (619) 557-5528

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| UNITED STATES OF AMERICA, | ) | Case No. 08CR0301-W |
|---|---|---|
| Plaintiff, | ) ) ) | DATE:      June 17, 2008<br>TIME:       9:00 a.m. |
| v. | ) ) | GOVERNMENT'S RESPONSE IN OPPOSITION |
| CARLOS DAVID QUINONEZ, SR., | ) ) | TO DEFENDANT'S MOTIONS *IN LIMINE* TO: |
| Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | (1) PRECLUDE DETAILS OF THE COMPARTMENT CONTAINING THE MATERIAL WITNESS;<br>(2) PRECLUDE HEARSAY STATEMENTS ABOUT SMUGGLING ARRANGEMENTS UNDER <u>CRAWFORD</u>;<br>(3) PRECLUDE EVIDENCE UNDER FEDERAL RULES OF EVIDENCE 404(b) AND 609;<br>(4) PRECLUDE THE INTRODUCTION OF DEFENDANT'S POST-ARREST STATEMENTS;<br>(5) EXCLUDE POVERTY EVIDENCE;<br>(6) EXCLUDE EXPERT WITNESSES;<br>(7) PRECLUDE THE INTRODUCTION OF "TECS" HISTORY;<br>(8) EXCLUDE GOVERNMENT'S CASE AGENT;<br>(9) NOT SEND THE INDICTMENT INTO THE JURY ROOM DURING DELIBERATIONS;<br>(10) ALLOW ATTORNEY-CONDUCTED VOIR DIRE; AND<br>(11) ORDER PRODUCTION OF GRAND JURY TRANSCRIPTS |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Peter J. Mazza, Assistant United States Attorney, hereby files its Response in Opposition to Defendant's above-referenced Motions In Limine. This Response is based upon the files and records of this case.

**I**

**STATEMENT OF FACTS**

**1.  Primary Inspection**

On January 28, 2008, at approximately 12:47 a.m., Defendant entered the San Ysidro, California Port of Entry as the driver, registered owner, and sole visible occupant of a 2000 Toyota Avalon, bearing California license plate number 5VRW176. Defendant presented his California driver's license to Customs and Border Protection (CBP) Officer Duran in primary inspection. During the course of the inspection, Officer Duran asked Defendant a number of questions. In response, Defendant stated that he is a United States citizen, that he was not bringing anything into the United States, and that he worked for the County of Orange. Defendant then presented Officer Duran his Registered Process Server identification card and badge issued by the Orange County Clerk-Recorder.

Officer Duran conducted an inspection of the vehicle and discovered a person concealed in the trunk. Officer Duran handcuffed Defendant and escorted him to the security office. Another officer then drove the vehicle to secondary for further inspection.

**2.  Secondary Inspection**

At secondary inspection, a lone male individual, later identified as Raul Esquivel-Olvera, was removed from the trunk. Officers

determined that Esquivel-Olvera was a citizen of Mexico without any legal entitlement to enter or remain in the United States.

**3.    Defendant's Statement**

At approximately 6:47 a.m., Defendant was advised of his <u>Miranda</u> rights in the English language. Defendant agreed to answer questions without an attorney present. Defendant stated that he drove from Orange County, California to Tijuana, Mexico at approximately 11:30 p.m. the night before. He stated that as soon as it started raining in Orange County, he headed to Tijuana to cover parts of the roof on his grandparents' unoccupied home. He was there for 30-40 minutes attending to the house before he headed back to the United States.

According to Defendant, he stopped at an intersection near the border in Tijuana when the material witness approached his vehicle and asked for help. Defendant stated that the material witness told him about his family hardship and asked Defendant for a ride into the United States. Defendant also stated that he knew the material witness wanted to be smuggled into the United States. Defendant stated that he felt sorry for the material witness and decided to help by smuggling him into the U.S. Defendant stated that he opened the trunk of the vehicle and the material witness entered.

Defendant admitted that he had the Registered Process Server identification card in its leather holder around his neck when he entered the San Ysidro Port of Entry. He also stated that the material witness was inside the trunk for approximately 5 minutes.

Defendant stated that he intended on taking the material witness to Orange County, but that he was not going to receive any compensation.

//

//

**4.   Material Witness's Statement**

The material witness, Raul Esquivel-Olvera, stated that he is a Mexican citizen by birth and that he does not possess any documents that would permit his legal entry into the United States. He stated that he wanted to go to Anaheim, California to seek employment.

Esquivel described how his wife made smuggling arrangements directly with Defendant. Although he was not sure of the exact amount, he stated that Defendant would be paid between $2,800 and $3,000 upon his arrival in Anaheim. Esquivel stated that his wife currently resides in Anaheim, and that she was going to pay Defendant upon arrival.

Esquivel stated that Defendant picked him up at the Hotel Buenavista in Tijuana. He waited outside for Defendant after his wife told him that Defendant was on his way to pick him up. He state that he waited approximately 2 ½ hours outside the hotel. Additionally, he stated that Defendant opened the trunk and told Esquivel that if they got caught, to say that he just asked Defendant for a ride. Esquivel stated that he was in the trunk for about 20 minutes before being apprehended at the border.

**5.   Defendant's Criminal Record**

Defendant has approximately 22 convictions between 1980 to present. Of particular note are the following convictions: (1) July 26, 2000 felony conviction for being a felon in possession of a firearm and carrying a concealed weapon in a vehicle with a prior felony conviction (sentenced to three years in prison); (2) October 29, 1997 felony conviction for possession of a controlled substance (sentenced to 32 months in prison); (3) November 30, 1988 misdemeanor conviction for false identification to peace officer; and (4) 1984 misdemeanor conviction for forgery.

**II**

**POINTS AND AUTHORITIES**

**1. PRECLUDE DETAILS OF THE COMPARTMENT CONTAINING THE MATERIAL WITNESS**

Although the Government does not intend to dwell on the location and condition of the material witness, the facts that he was concealed within the trunk, how he was placed in the trunk, and how long he remained in the trunk are certainly relevant to Defendant's knowledge of the material witness's presence and alienage. The Government intends to introduce such evidence to support the knowledge elements required by the violations charged, not to inflame or prejudice the jury. See, e.g., United States v. Perry, 857 F.2d 1346, 1351 (9th Cir. 1988) (holding that the admission of testimony used only to prove an element of the offense was not plain error.) Accordingly, such testimony should be admitted.

**2. PRECLUDE HEARSAY STATEMENTS ABOUT SMUGGLING ARRANGEMENTS UNDER *CRAWFORD***

Co-conspirator statements concerning smuggling and transportation arrangements are admissible under Federal Rule of Evidence 801(d)(2)(e). The material witness should be permitted to testify regarding his arrangements to be smuggled into the United States and then transported to his ultimate destination. To the extent theses arrangements and details include statements from Defendant's accomplices or the Defendant himself during the course of the smuggling venture, the Court should admit those statements as non-hearsay statements under the co-conspirator provision.

An out of court statement offered for the truth of the matter asserted is normally considered hearsay under Rule 801(c). However, under Rule 801(d)(2)(E), statements made by a co-conspirator of a

party during the course and in furtherance of a conspiracy are not hearsay.

Despite Defendant's assertions to the contrary, the Supreme Court in Crawford v. Washington, 541 U.S. 36, 55 (2004), held that such co-conspirator statements are non-testimonial as well. The Crawford decision specifically identifies co-conspirator statements as non-testimonial, citing its prior decision in United States v. Bourjaily, 483 U.S. 171 (1987), in which the Supreme Court held that even though the defendant had no opportunity to cross examine the declarant at the time that he made the statements and the declarant was unavailable to testify at trial, the admission of the declarant's statements against the defendant did not violate the Confrontation Clause. Crawford, 541 U.S. at 56. The Supreme Court approved its prior holding regarding co-conspirator statements, citing Bourjaily as an example of an earlier case that was consistent with the principal that the Confrontation Clause permits the admission of non-testimonial statements in the absence of a prior opportunity for cross examination. Crawford, 541 U.S. at 57. Several Circuits have allowed such co-conspirator statements post-Crawford. See United States v. Cianci, 378 F.3d 71, 101-2 (1st Cir. 2004); United States v. Saget, 377 F.3d 223, 229 (2nd Cir. 2004); United States v. Mickelson, 378 F.3d 810, 819-20 (8th Cir. 2004).

Co-conspirator statements are admissible under Rule 801(d)(2)(E) if the Government demonstrates that (1) a conspiracy existed, (2) the defendant and the declarant were members of the conspiracy, and (3) the statement was made during the course of and in furtherance of the conspiracy. United States v. Bourjaily, 483 U.S. 171 (1987); United States v. Peralta, 941 F.2d 1003, 1007 (9th Cir. 1991), cert. denied, 503 U.S. 940 (1992). The existence of a conspiracy and defendant's

involvement in the conspiracy are questions of fact that must be resolved by the Court by a preponderance of the evidence. Fed. R. Evid. 104; Bourjaily, supra, at 175. "Furtherance of a conspiracy" is to be interpreted broadly. United States v. Manfre, 368 F.3d 832, 838 (8th Cir. 2004).

The Government is not required to charge the defendant with conspiracy, United States v. Layton, 855 F.2d 1388 (1988), or charge the declarant as a co-defendant in any conspiracy in order to admit co-conspirator statements. United States v. Jones, 542 F.2d 186 (4th Cir. 1976). Furthermore, upon joining the conspiracy, earlier statements made by co-conspirators after inception of the conspiracy become admissible against the defendant. United States v LeRoux, 738 F.2d 943, 949-950 (8th Cir. 1984). In United States v. United States Gypsum Co., 333 U.S. 364, 393 (1948), the Supreme Court held that "the declarations and acts of various members, even though made prior to the adherence of some to the conspiracy become admissible against all as declarations or acts of coconspirators in aid of the conspiracy." In other words, a defendant who joined the conspiracy at a later date, took the conspiracy as he found it. United States v. Hickey, 360 F.2d 127, 140 (7th Cir. 1966).

The Court may consider the content of the statements in determining whether the co-conspirator statement is admissible. Bourjaily, 483 U.S. at 180. Further, once the Court has ruled that the statement meets the evidentiary requirements for admission under 801(d)(2)(E), the Court need not make an additional inquiry as to whether the declarant is unavailable or whether there is any independent indicia of reliability. Id. at 182-184.

//

//

**A.   Conspiracies Existed**

In this case, the conspiracies consist of the efforts made by known and unknown persons, including Defendant, the material witness, and any paying family member(s), to smuggle the material witness into the United States and transport him to his destination within the United States. The evidence of this conspiracy stems not only from the testimony of the material witness but from the fact of Defendant's arrest and the lack of documentation of the material witness.

**B.   Defendant and the Declarants Were Members of the Conspiracy**

The Government anticipates that the testimony of the material witness at trial will demonstrate that his wife made the smuggling arrangements directly with Defendant, including agreeing on a monetary amount. The material witness's wife then informed the material witness of the arrangements she had made with Defendant. As such, Defendant, the material witness, and the other individuals who took part in the effort to smuggle the material witness into the United States, including the material witness's wife, were part of the conspiracy.

**C.   Co-conspirator Statements Were Made During the Course of, and in Furtherance of, the Conspiracy**

The co-conspirator statements that the Government contends are non-hearsay involve the smuggling arrangements made on behalf of the material witness, including the financial arrangements and any statements concerning his transportation from Mexico into the United States. The Government asserts that no smuggling venture would have occurred at all if not for the anticipated payments. Thus, the financial arrangements were an integral component of the smuggling conspiracy and such statements were made in furtherance of the smuggling venture.

As such, all statements regarding the financial arrangements and planning of the smuggling venture made on behalf of the material witness should be admissible against Defendant.

**D.  The Court May Conditionally Admit Co-Conspirator Statements**

Defendant may contend at the time of trial that the Court may not admit any statements until the Government lays the proper foundation for the above-referenced elements. This position lacks merit. The district court may, if needed, conditionally admit co-conspirator statements subject to a motion to strike if the Government fails to establish the requisite foundation. United States v. Reed, 726 F.2d 570, 580 (9th Cir. 1984); United States v. Loya, 807 F.2d 1483, 1490(9th Cir. 1987).

**3.  PRECLUDE EVIDENCE UNDER FRE 404(b) AND 609**

On April 2, 2008, in response to Defendant's motion for discovery, the Government provided notice of its intent to use any of Defendant's approximately 22 prior convictions to impeach him should he testify at trial. The Government's brief particularly noted its intention to impeach Defendant with his 1984 misdemeanor conviction for forgery and his 1996 misdemeanor conviction for hit and run: property damage.[1/]  On May 29, 2008, the Government provided defense counsel with notice of its intention to impeach Defendant with his 1997 felony conviction for possession of a controlled substance, his 2000 conviction for being a felon in possession of a firearm, carrying a concealed weapon, in a vehicle with a prior felony conviction, and his 1988 misdemeanor conviction for false identification to a peace officer. The Government should be allowed to impeach Defendant with these convictions should he choose to testify at trial.

---

[1/]   The Government does not seek to introduce evidence of Defendant's 1996 misdemeanor conviction for hit and run: property damage.

Also on May 29, 2008, out of an abundance of caution, the Government provided notice of its intention to introduce crossing history related to Defendant and the vehicle that he was driving at the time of his arrest, even though the Government does not concede that such evidence is 404(b) evidence. Additionally, again out of an abundance of caution, the Government provided notice that CBP Officer Sergio Barron may be called to testify regarding TECS data at trial. As stated below, this evidence is admissible whether regarded as "inextricably intertwined" with the instant offense or 404(b) evidence.

**A.   The Government Should Be Able To Impeach Defendant With His Prior Convictions**

Rule 609 provides that evidence that an accused has been convicted of a crime punishable by imprisonment in excess of one year "shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial value to the accused." United States v. Martinez-Martinez, 369 F.3d 1076, 1088 (9th Cir. 2004). "Evidence that any witness is convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of punishment." Fed. R. Evid. 609(a)(2); see also United States v. Foster, 227 F.3d 1096, 1099-1100 (9th Cir. 2000). Evidence of the conviction is admissible if ten years or less has elapsed since the *later* of: (1) the date of conviction; or (2) the release of the witness from the confinement imposed for that conviction. Fed. R. Evid. 609(b). However, if the Court determines that "in the interests of justice, that the probative value of the conviction . . . substantially outweighs its prejudicial effect," then convictions older than 10 years may also be admitted. Id.

In United States v. Cook, 608 F.2d 1175, 1185 n.8 (9th Cir. 1979) (en banc), overruled on other grounds by Luce v. United States, 469

U.S. 38 (1984), the Ninth Circuit set forth a five-factor test for balancing the relative probativeness and unfair prejudice of a prior conviction. Under this test, the Court should consider: (1) the impeachment value of the prior crime; (2) the temporal relationship between the conviction and the defendant's subsequent criminal history; (3) the similarity between the past and the charged crime; (4) the importance of defendant's testimony; and (5) the centrality of the credibility issue. Id. This court need not analyze each of the five factors explicitly. United States v. Jimenez, 214 F.3d 1095, 1098 (9th Cir. 2000).

If Defendant chooses to testify, his credibility will be a central issue in the case and Defendant's character for honesty is a factor that should be carefully weighed by the Court. The importance of Defendant's testimony is crucial in a case such as this, where Defendant would presumably be called to testify only if he intended to claim that: (1) he did not know the undocumented alien was in his vehicle; (2) he did not know the person was, in fact, an alien; (3) he was motivated by sympathy for the alien and not money.

Should the defendant testify, the Government should be permitted to demonstrate Defendant's lack of trustworthiness by utilizing for impeachment purposes his prior convictions. Regarding his 2000 felony conviction, Defendant committed the offense within the last ten years. Regarding his October 29, 1997 felony conviction, Defendant was released from prison within the last ten years, as he served a sentence of 32 months. For both, the probative value of his conviction is not substantially outweighed by the danger of unfair prejudice.

Regarding his two misdemeanor convictions that the Government seeks to introduce, the Court should admit both despite that they are

more than 10 years old and are misdemeanor convictions. First, the Courts of Appeals have repeatedly upheld the admission of convictions more than 10 years old where, as here, the defendant's credibility is critical to the case. For example, in United States v. Murray, 751 F.2d 1528 (9th Cir. 1985), the Ninth Circuit upheld the admission of the defendant's 17-year-old conviction for receiving stolen property where the defendant's credibility was "highly probative" and the conviction itself was probative of veracity. Id. at 1533. See also United States v. Payton, 159 F.3d 49, 57-58 (2d Cir. 1998) (witness' 13-year-old conviction was properly admitted where witness' testimony was "crucial" to defense); United States v. Pritchard, 973 F.2d 905, 909 (11th Cir. 1992) (upholding admission of defendant's 13-year-old conviction where defendant's testimony was "vital" to his defense).

Here, Defendant's two misdemeanor convictions are admissible. First, they are highly probative of his veracity, which will be a central issue should he choose to testify. Therefore, despite that they are older than 10 years, their probative value substantially outweighs any prejudice their introduction may cause. Second, they are admissible despite that they are misdemeanors because they involve crimes of dishonesty. The Ninth Circuit has reasoned that the "dishonesty and false statement," Fed. R. Evid. 609(a)(2), language of Rule 609(a)(2) should be limited to "those crimes that involve some element of misrepresentation or other indicium of a propensity to lie and [to exclude] those crimes which, bad though they are, do not carry with them a tinge of falsification." Foster, 227 F.3d at 1100 (quoting United States v. Ortega, 561 F.2d 803, 806 (9th Cir. 1977)). The two crimes the Government seeks to introduce are providing false identification to a peace officer and forgery. Such crimes epitomize acts that involve "dishonesty" or providing a "false statement." For

all these reasons, Defendant's prior convictions outlined above – which represent a mere fraction of his 22 prior convictions – should be admitted under Rule 609.

**B.   Evidence Regarding TECS Records Are Admissible**

The Government may offer evidence of prior crossings by Defendant and/or the vehicle in which he was arrested on the day of the offense. Any such evidence is admissible because it is "inextricably intertwined" with the acts constituting the instant offense, or alternatively, under Rule 404(b).

The most common type of evidence that is not subject to Rule 404(b) involves evidence that is not of an extrinsic act, but rather is of an intrinsic act intertwined with the charged offense or offenses. The Ninth Circuit has consistently held that evidence relating to uncharged, inextricably intertwined acts do not fall within the purview of Rule 404(b). See e.g., United States v. Beckman, 298 F.3d 788, 793 (9th Cir. 2002) (admitting evidence of prior drug runs by a defendant, as testified to by his co-conspirator, so that the prosecutor may offer a "coherent and comprehensible story regarding the commission of the crime"); United States v. King, 200 F.3d 1207, 1214 (9th Cir. 1999) (finding that testimony of a former business associate of defendant admissible to explain the nature of defendant's business scheme in a bank fraud case); see also United States v. Soliman, 813 F.2d 277, 279 (9th Cir. 1987) ("Evidence should not be treated as other crimes evidence when the evidence concerning the other act and the evidence concerning the crime charged are inextricably intertwined.") (internal quotations and citations omitted).

In United States v. Vizcarra-Martinez, 66 F.3d 1006 (9th Cir. 1995), the Ninth Circuit explained that inextricably intertwined

evidence that does not fall under Rule 404(b)'s umbrella typically come in two forms. First, some "other act" evidence is admissible because it constitutes a part of the transaction that serves as the basis for the criminal charge. See id. at 1012; see also United States v. Williams, 989 F.2d 1061, 1070 (9th Cir. 1993) ("[T]he policies underlying rule 404(b) are inapplicable when offenses committed as part of a single criminal episode become other acts simply because the defendant is indicted for less than all of his actions."). Second, "other act" evidence may be admitted when it is necessary to offer a coherent and comprehensible story regarding the commission of the crime. See Vizcarra-Martinez, 66 F.3d at 1012-13; see also United States v. Daly, 974 F.2d 1215, 1216 (9th Cir. 1992) (admitting evidence regarding a shoot-out between the defendant and police as inextricably intertwined to evidence of the crime alleged: felon in possession of a firearm). Although not subject to Rule 404(b), both types of inextricably intertwined evidence described in Vizcarra-Martinez may require pre-trial notice under Rule 16. See, e.g., Fed. R. Crim. P. 16(a)(1)(E) (requiring disclosure of papers, documents, in the Government's possession if the Government intends on using the items in its case-in-chief).

Rule 404(b) of the *Federal Rules of Evidence* precludes the admission of evidence of "other acts . . . to prove the character of a person in order to show action in conformity therewith" but allows such evidence to establish "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). The Ninth Circuit has adopted a four-part test to determine the admissibility of evidence under Rule 404(b). The court should consider the following: (1) the evidence of other crimes must tend to prove a material issue in the case; (2) the other crime must

be similar to the offense charged; (3) proof of the other crime must be based on sufficient evidence; and (4) commission of the other crime must not be too remote in time. See United States v. Montgomery, 150 F.3d 983, 1000-01 (9th Cir. 1998). In addition to satisfying the four-part test, evidence of other crimes must also satisfy the Rule 403 balancing test, *i.e.*, its probative value must not be substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 403.

Finally, TECS data is admissible as a public record. The Ninth Circuit has held that the type of crossing information recorded in TECS may be admitted as a public record. See United States v. Orozco, 590 F.2d 789, 793 (9th Cir. 1979) (holding TECS admissible as a public record under FRE 803(8)). Therefore, if a sufficient foundation is laid, the TECS information would be admissible. Contrary to Defendant's designation of this evidence as "expert testimony," as a public record all that is necessary for admissibility of the evidence is a witness who can establish that these records set forth the activities of the office or agency or reflect matters observed pursuant to duty imposed by law. See Fed. R. Evid. 803(8). Here, a Customs and Border Protection agent will be able to testify that the TECS system records license plates for vehicles crossing through the border between the United States and Mexico. Customs and Border Protection is responsible for controlling and regulating passage of vehicles and persons into and out of the United States from Mexico. Thus, the TECS evidence squarely reflects the regularly conducted activities of the agency.

On May 29, 2008, the Government provided notice of possible testimony regarding TECS data. On June 9, 2008, the Government provided Defendant with TECS records regarding the southbound crossing

of the vehicle just prior to the offense, as well as four other crossings. The one southbound crossing occurred only 1:09 prior to Defendant entering the San Ysidro Port of Entry with the undocumented alien in the trunk of the vehicle. This would be the only crossing the Government would seek to introduce in its case-in-chief. The southbound crossing just over one hour before Defendant's arrest is part of the same "criminal transaction" for which he was indicted. Accordingly, it is admissible as evidence "inextricably intertwined" with the instant offense. Alternatively, should the Court evaluate this crossing under the more rigorous 404(b) standard, it is admissible under the four-part test articulated in Montgomery, 150 F.3d at 1000-01.

**4.    PRECLUDE THE INTRODUCTION OF DEFENDANT'S POST-ARREST STATEMENTS**

Defendant's motion should be denied as moot in light of the Court's April 9, 2008 ruling to suppress Defendant's post-arrest statement. However, should Defendant testify, the Government reserves the right to use his prior statements for impeachment purposes. See Oregon v. Haas, 420 U.S. 714, 721-22 (1975) (holding that statements that were suppressed for exceeding the scope of a Miranda waiver were nonetheless admissible for impeachment purposes).

**5.    PRECLUDE EVIDENCE OF DEFENDANT'S POVERTY**

Defendant moves to preclude testimony or evidence of Defendant's financial circumstances. Although it is correct that poverty evidence alone may not be used as proof of motive, the Ninth Circuit has recognized that evidence of a Defendant's "abrupt change" in financial circumstances or sudden financial need may be admissible.

Financial evidence that shows nothing "more than the mere fact that the defendant is poor" is inadmissible because such evidence is of limited probative value and may be unfairly prejudicial. United

States v. Mitchell, 172 F.3d 1104, 1108-10 (9th Cir. 1999); see also United States v. Bensimon, 172 F.3d 1121, 1129 (9th Cir. 1999). Evidence of a defendant's financial situation may be admitted, however, when such evidence shows something other than poverty. Id. at 1108 (citing United States v. Jackson, 882 F.2d 1444, 1449 (9th Cir. 1989). For example, when a defendant is accused of committing a crime resulting in financial gain, evidence of that defendant's substantial debts is admissible to show motive. Id. (citing United States v. Feldman, 788 F.2d 544, 557 (9th Cir. 1986)). Likewise, evidence of a defendant's financial situation may be admitted when a defendant is living beyond his means. Id.

At this time, the Government does not intend to introduce evidence of Defendant's financial circumstances. Should further investigation reveal financial evidence that would be admissible, for example to show immediate financial need or an abrupt change in circumstances, the Government reserves the right to use such evidence. The Government also acknowledges its obligation to produce any such evidence and to provide Defendant with notice.

**6.   EXPERT WITNESSES OFFERED BY THE GOVERNMENT**

Defendant argues that the Government should be precluded from offering expert testimony. He alleges that the Government had not yet given notice of a potential expert witness as of the June 5, 2008 filing of Defendant's Motions In Limine.

On May 29, 2008, the Government provided notice to Defendant that it may call CBP Officer Sergio Barron to testify as to TECS data related to Defendant's prior crossings and the crossings of the vehicle driven by Defendant at the time of his arrest. Although the Government does not believe that such testimony is properly characterized as "expert" testimony under Rule 16(a)(1)(G) and Federal

Rules of Evidence 702, 703, and 705, the Government nonetheless provided notice. Accordingly, the Government should be allowed to elicit testimony regarding TECS information from CBP Officer Barron.

**7. TESTIMONY REGARDING TECS DATA IS ADMISSIBLE**

As discussed above in Section 3.B., testimony regarding TECS data is admissible because it is "inextricably intertwined" with the acts constituting the instant offense, or alternatively, under Rule 404(b).

**8. EXCLUDE GOVERNMENT'S CASE AGENT FROM COURTROOM**

Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. The case agent in the present matter has been critical in moving the investigation forward to this point and is considered by the United States to be essential to the presentation. As such, the case agent's presence at trial is necessary to the United States. However, the United States requests that Defendant's testifying witnesses be excluded during trial pursuant to Rule 615.

**9. PRECLUDE THE COURT FROM SENDING THE INDICTMENT BACK TO THE JURY**

As the parties are aware, and as the Court instructs the jury, the indictment is not evidence. The United States submits that the indictment is a helpful way to organize the counts and the charges for the jury. The government defers to the Court's practice as to whether to send the indictment into the jury room.

**10. ALLOW ATTORNEY CONDUCTED VOIR-DIRE**

The Government does not oppose Defendant's motion.

**11. ORDER PRODUCTION OF GRAND JURY TRANSCRIPTS**

Defendant seeks production of the grand jury transcripts yet fails to support his motion with a showing of the requisite need to

invade the sanctity of the grand jury's deliberations. As such, his motion should be denied.

The need for grand jury secrecy remains paramount unless the defendant can show "a particularized need" that outweighs the policy of grand jury secrecy. United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986); United States v. Murray, 751 F.2d 1528, 1533 (9th Cir. 1985). The Government does not anticipate calling as a witness in this case any witness that previously testified about it before the Grand Jury. Accordingly, there is no extraordinary basis to support Defendant's request for grand jury transcripts.

### III

### CONCLUSION

For the foregoing reasons, the United States respectfully asks that the Court deny Defendant's motions where indicated.

DATED: June 11, 2008.

                         Respectfully submitted,

                         KAREN P. HEWITT
                         United States Attorney


                         s/ Peter J. Mazza
                         PETER J. MAZZA
                         Assistant United States Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CARLOS DAVID QUINONEZ, SR., ) <br> ) <br> Defendant. ) <br> _____ ) | Case No. 08-CR-0301-W <br><br> CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, PETER J. MAZZA, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of the Government's Motions in Limine on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. HANNI FAKHOURY, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 11, 2008.

                                         s/ Peter J. Mazza
                                         PETER J. MAZZA